## VILBIG BROS. v. CITY OF DALLAS et al.

Motion No. 12383; No. 6940.

Supreme Court of Texas.

July 15, 1936.

Claud C. Westerfeld, of Dallas, for plaintiff in error.

W. Hughes Knight, A. J. Thuss, Hugh S. Grady, H. P. Kucera, Bartlett, Thornton & Montgomery, and McBride, O'Donnell & Hamilton, all of Dallas, for defendants in error.

PER CURIAM.

The original opinion in this cause is by Section B of the Commission. It is published in 91 S.W.(2d) 336. We refer to that opinion for a statement of the case.

It appears from the record that the city of Dallas is a municipal corporation, operating as a home rule city under a charter duly adopted. The city determined to pave Sherman street, located therein. The specifications for such paving called for a 6-inch concrete base. All bidders bid on exactly the same thing in this regard.

The specifications called for a 2-inch surface to be placed on the above concrete base. According to such specifications, bidders were permitted to bid on five different surfacing materials. It is shown that the first three were patented. For the purposes of this opinion we will conclude that each of the three was owned and controlled by a monopoly, created by the patent, and that only the owner of such patent could bid thereon. The fourth surfacing material was "Uvalde County Rock Asphalt." We do not understand that such material was patented, but for the purposes of this opinion we will conclude that it was a monopoly, because the source of supply was owned and controlled by one concern. The fifth surfacing material specified was not patented, and its source of supply was not owned or controlled by one concern. Any person or concern could manufacture and use it. It further appears from the record that the contract was let to Uvalde Construction Company. It had bid on the "Uvalde County Rock Asphalt" surfacing, and was the only concern bidding on that material. Other concerns did bid on the other surfacing materials specified. The city authorities, in good faith, determined that the bid of the Uvalde Construction Company was the lowest and best bid.

The charter of the city provides:

"No contract shall be entered into by the Board of Commissioners until after an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts shall be made upon specifications, * * *

"All contracts of whatever character, pertaining to public improvements, or the maintenance of public property of said city, involving an outlay of as much as five hundred ($500) dollars, shall be based upon the specifications to be prepared and submitted to and approved by the Board of Commissioners; and after approval by the Board of Commissioners, advertisement for the proposed work, or matters embraced in said proposed contract, shall be made, inviting competitive bids for the work proposed to be done, which said advertisement shall be published in a daily newspaper not less than five times. All bids submitted shall be sealed, shall be opened by the Mayor in the presence of a majority of the Board of Commissioners, and shall remain on file in the office of City Secretary and be open to the public inspection for at least forty-eight hours before any award of said work is made to any competitive bidder.

"The Board of Commissioners shall determine the most advantageous bid for the City, and shall enter into contract with the party submitting the lowest secure bid;

and if, in the opinion of the Board of Commissioners, none of said bids are satisfactory, then the Board of Commissioners may have said work done by day labor, and a detailed statement of all such work done by day labor, showing the cost of same, shall be filed with the Board of Commissioners. Pending the advertisement of the work or contract proposed, specifications therefor shall be on file in the office of the City Secretary, subject to the inspection of all parties desiring to bid."

Under the above record and charter provision, the Vilbigs, who owned property abutting on the street in question, against which part of the cost of this paving was assessed, contend that the contract to have Sherman street paved was utterly void, because the specifications contain patented materials for the surfacing. In this regard the motion for rehearing in this court contains the following propositions:

"First proposition. There can be no competition under a contract where the city incorporates the plans and specifications covering patented materials and requests the owners of said patented material to bid on their own specifications.

"Second proposition. There can be no competitive bidding on a public contract where the city incorporates the plans and specifications covering the material, in that there is lacking any common standard or basis, and there is no way of determining which is the lowest bidder, because all were bidding on different materials.

"Third proposition. The incorporation of the plans and specifications of patented materials for work to be done for the City and the advertisement for bids on such, negatives the existence of free competition in such bidding and prevents and tends to prevent competition."

It will be noted that the above-quoted charter provision requires that contracts such as this be made upon specifications and competitive bids. But there is no express provision prohibiting the specification of patented articles. Much has been written on the right of a city to purchase patented articles under statutes or charter provisions such as this. In regard to such matters the courts of this country are in hopeless conflict. 44 C.J. p. 103.

The contract here involved, considered in the light of the facts of this case, does not call for an extensive discussion of the question of the right to specify patented articles. It is our opinion that the specifications, supra, fairly and substantially meet the requirements of the charter provisions, supra, in the respect under discussion. The contract here sought to be annulled is therefore not void; in fact, it is not even voidable. It is true that it permitted bids on three patented articles. It is also true that it permitted bids on one article controlled by one concern. On the other hand, it permitted bids on one article which all could use and bid on. Regardless of all this, the specifications carefully preserved full and fair competition as between bidders offering different types of surfacing materials. The bidders on the patented materials were in full competition with each other and with the bidders on the nonpatented material. Also, the bidders on the nonpatented material were in full competition with the bidders on the patented materials. The city reserved the power to accept or reject all bids, and there is no evidence showing, or tending to show, that this power was not fairly exercised. To our minds, the specifications here involved, when viewed in the light of this entire record, not only did not stifle competition, but tended to stimulate the same. To say that the city under the above charter provision must specify one particular nonpatented material, or must specify only nonpatented materials, and absolutely exclude all that are patented, would exclude all bidders that would use patented materials only, and would, therefore, circumscribe the field of bidders, and discourage, rather than encourage, competition. The prime purpose of the charter provision, supra, providing for specifications and competitive bids, is to stimulate competition among prospective contractors, and thus enable the city to secure the very best contract possible. To outlaw specifications such as this would not only have a tendency to retard competition, but would deprive the city, in many instances, of the right to use valuable patented articles.

Finally, we wish to say that we are not here attempting to fully define the powers of the city, under the above charter provision, to specify patented articles. The facts and issues of this case do not justify us in doing so. We simply hold that the specifications here involved, when viewed in the light of the end sought to be attained, and the other facts and circum-

stances already detailed, show a substantial compliance with the "specifications" requirements of the above charter provision. . Of course we do not hold, or even intimate, that there existed any positive duty on the part of the city to specify patented articles in this instance. We simply hold that in the manner this was done, the charter provision under discussion was not violated.

We have carefully considered the other grounds of error urged in the motion for rehearing, and in our opinion they present no reversible error. The motion for rehearing is overruled.